```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

BRUCE SCHWAGER                *
                              *
          v.                  *    Civil Action WMN-08-CV-1870
                              *
BERT BELL/PETE ROZELLE        *
NFL PLAYER RETIREMENT PLAN    *
                              *

*    *    *    *    *    *    *    *    *    *    *    *
```

**MEMORANDUM**

Before the Court is Plaintiff Bruce Schwager's Motion for Summary Judgment, Paper No. 46, and Defendant's Motion for Summary Judgment, Paper No. 49.  The motions are fully briefed.  Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Plaintiff Bruce Schwager's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted as set forth below.

**I.   BACKGROUND**

Plaintiff Bruce Schwager brought this action seeking to overturn the decision of the Retirement Board of Defendant Bert Bell/Pete Rozelle NFL Retirement Plan denying his request for retirement benefits.[1]  The Retirment Board denied Plaintiff's

---

[1] This case was initially brought by two additional Plaintiffs, Pio Sagapolutele and Sean Lamar Smith and named an additional Defendant, NFL Player Supplemental Disability Plan.  On March 3, 2009, Mr. Sagapolutele, Mr. Smith and Defendants stipulated to a

request based on Plaintiff's never playing in an NFL game or receiving compensation from the NFL.  Plaintiff, however, argues that because he was under contract with the Chicago Cardinals from 1955 to 1959 and, under NFL rules at the time, prevented by the Cardinals from playing football during that time, he is entitled to retirement benefits.

## A.   Mr. Schwager's History in the NFL

Bruce Schwager was drafted by the Chicago Cardinals in 1955 and signed a contract with them on January 27, 1955.  Unfortunately, neither party has been able to locate this contract.  It is undisputed, however, that Mr. Schwager reported to Cardinal's training camp later that year and was listed on the Cardinals' official 1955 Training Camp Roster as a tackle.  The Cardinals released him from the training camp a few days after it started on account of a broken eardrum, whereupon the Cardinal's placed him on the team's "Reserve" list on August 26, 1955.

---

dismissal with prejudice of those two Plaintiffs' claims pursuant to written settlement agreements.  Paper No. 39.  These Parties also stipulated to the sealing of three documents filed in this action addressing settlement issues: 1) Plaintiffs' December 29, 2008, Status Report, Paper No. 27; 2) Defendants' December 29, 2008, Status Report, Paper No. 28; and 3) Plaintiffs' January 8, 2009, Motion to Enforce Settlement Agreement, Paper No. 29.  Id.  The Court will seal the three requested documents by separate order.

From the fall of 1955, Mr. Schwager attempted to play football either for the Cardinals or the Giants, but the Cardinals refused to move him off the "Reserve" list, preventing his playing for any other NFL team.  In February 1956, Cardinals Head Coach Ray Richards wrote Schwager to ask if he was "interested in playing ball for the Cardinals this fall."  He expressed his belief that "if you report on opening day at training camp in good shape, you'll have an excellent chance to make our ball club."  Nonetheless, despite following up twice with the Cardinals seeking either for a chance to play for that club or his release so that he could play for another club, he was only informed that the Cardinals still considered him under contract.

In July 1956, Schwager received notice that he had been drafted for military service and reported for duty in September 1956.  While still in the Navy, in March 1958, Schwager again wrote to the Cardinals requesting release from his contract so that, upon his discharge, he could pursue a playing career with another NFL club.  The response he received was a request for information on the interested team so that the Cardinals could contact them about a trade.

Schwager was honorably discharged from the Navy in December 1958 and visited the Cardinal offices in Chicago in February 1959 to again seek a release.  The club refused to do so without

some compensation from another team.  The next month, the San Francisco 49ers expressed interest in signing Schwager, but declined to trade with the Cardinals for his contract rights.

Schwager was finally released from his contract with the Cardinals on April 30, 1959.  In the spring of 1960, Schwager attended a tryout for the New York Titans and was offered a contract for $7500.  He signed the contract in July 1960 and attended Titans' training camp as an offensive tackle, but suffered a severe injury during training camp and was released by the Titans.  Mr. Schwager never played in any NFL games and was never paid by the NFL.

**B.   The Bert Belle/Pete Rozelle NFL Player Retirement Plan**

The Parties agree that Defendant, the Bert Bell/Pete Rozelle NFL Player Retirement Plan (Plan) is an employee pension benefit plan within the meaning of §3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), created for the benefit of the employees of the National Football League's member teams.  A Retirement Board (Board) consisting of six voting members (three appointed each by the NFL and the NFL Players' Association) is responsible for administering and implementing the Plan.

The Plan provides retirement benefits to qualified persons who have "Credited Seasons."  Section 1.10 of the Plan defines a "Credited Season," inter alia, as

a Plan Year in which a player:

4

>   (a)  is an Active Player (including an injured
>        Player who otherwise satisfies the
>        definition of "Active Player") on the date
>        of three or more games . . . .
>
>   (d)  is absent from employment by an Employer
>        while serving in the Armed Forces of the
>        United States, provided such Player returns
>        as an Active Player, after first being
>        eligible for discharge from military
>        service, by the later of (i) 90 days or any
>        longer period prescribed by applicable law,
>        or (ii) the opening of the official pre-
>        season training camp.

An "Active Player," is defined in § 1.1 as:

>   a Player who is obligated to perform football
>   playing services under a contract with an
>   Employer . . . .

A "Player" is defined in § 1.28 as:

>   any person who is or was employed under a
>   contract by an Employer to play football in the
>   League and who is or was:
>
>   (a)  on the Active List or the Inactive List (as
>        such lists are or have been defined in the
>        Constitution and By-Laws of the League) of
>        an Employer . . .
>
>   (c)  injured in the course and scope of his
>        employment for an Employer and by reason of
>        such injury paid under such contract for all
>        or part of the Plan Year in which the injury
>        occurs or occurred . . . or
>
>   (e)  on the Reserve/Physically Unable to Perform
>        or the Reserve/NFI-EL Lists of an Employer
>        (as such lists have been defined in the
>        Constitution and By-Laws of the League).

5

## C.  **Proceedings Before the Retirement Board**

Mr. Schwager submitted an application for Credited Seasons under the Plan in November 2004.  On January 21, 2005, the Retirement Board denied the application, and on July 22, 2005, affirmed the denial on appeal.  Mr. Schwager thereafter sued the Plan for an award of Credited Seasons.  On December 12, 2008, the parties stipulated to remand the matter to (i) enable the Plan to request additional evidence from the NFL and Cardinals, and (ii) to allow Mr. Schwager to submit additional materials.

After receiving additional materials on remand, the Retirement Board again considered Mr. Schwager's request at its February 12, 2009 meeting, and denied Mr. Schwager's claim.  By letters dated March 31, April 9, and July 22, 2009, Mr. Schwager submitted a request for reconsideration of the Retirement Board's February 12, 2009 decision and further argument and information in support of his claim.

On August 19, 2009, the Retirement Board considered Mr. Schwager's request for Credited Seasons for the fourth time.  The Retirement Board affirmed the denial of Mr. Schwager's request for Credited Seasons concluding that Mr. Schwager was not "obligated to perform football playing services under a contract" on the date of three or more regular-season or post-season games in each of the 1955 through 1958 seasons, and thus, was not an "Active Player" in those seasons.  Mr. Schwager is

now appealing to this Court the Retirement Board's August 19, 2009, denial of his request for Credited Seasons.

## II.  STANDARD OF REVIEW: ABUSE OF DISCRETION

The parties agree that the appropriate standard of review of the Board's denial of Mr. Schwager's petition for retirement benefits is abuse of discretion.  In ERISA cases, the abuse of discretion standard equates to reasonableness.  <u>Evans v. Eaton Corp. Long Term Disability Plan</u>, 514 F.3d 315, 322 (4th Cir. 2008).  If a decision is reasonable, the court will not disturb it; if it is unreasonable the court will reverse or remand it.  <u>Id.</u>  The decision is reasonable if it is the result of a deliberate, principled reasoning process and is supported by substantial evidence.  <u>Id.</u>  Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and "more than a mere scintilla."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).

In <u>Booth v. Wal-mart Stores, Inc.</u>, the Fourth Circuit enumerated a non-exclusive list of eight factors a reviewing court may use to determine whether the fiduciary abused its discretion in denying benefits to a plan participant:

   (1)  The language of the plan;
   (2)  The purposes and goals of the plan;

> (3) The adequacy of the materials considered to make the decision and the degree to which they support it;
>
> (4) Whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan;
>
> (5) Whether the decision-making process was reasoned and principled;
>
> (6) Whether the decision was consistent with the procedural and substantive requirements of ERISA;
>
> (7) Any external standard relevant to exercise of discretion; and
>
> (8) The fiduciary's motives and any conflict of interest it may have.

201 F.3d 335, 342-43 (4th Cir. 2000).

## III. DISCUSSION

The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself. Lockhart v. United Mine Workers of America 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993). Here the Parties agree that an award of credited seasons must be given to any person, employed under a contract with a team to play football, who was obligated to perform football playing services under that contract on the date of three or more games. An absence due to military service

8

can also qualify for credited seasons if the person was employed by an NFL team prior to his military service and met these same criteria following discharge.  The parties agree that Mr. Schwager was under contract with a team to play football and that he was on the Cardinals' Reserve list from the years 1955-1959.  Where they disagree, however, is whether by virtue of being under contract Mr. Schwager was "obligated to perform football playing services," transforming him into an "Active Player" entitled to an award of credited seasons.

   The Board based its denial of Mr. Schwager's application on a letter sent by Joel Bussert, Vice President of Player Personnel for the League.  In his letter, Mr. Bussert asserted that based on looking at Mr. Schwager's player card, the only document that the League maintained reflecting his player status during his NFL career, Mr. Schwager had been placed on reserve under the Left Camp category.  The Left Camp notation indicated that he left the club without retiring, could not participate in games, could not practice and could not receive compensation. Mr. Bussert concluded that Mr. Schwager was, therefore, precluded from performing football services during the period he was placed on reserve from August 26, 1955, through April 30, 1959.  The Retirement Board concluded that "[a]n individual who is prevented from playing football in the league cannot . . . be an individual who is obligated to perform football playing

9

services," which meant that Mr. Schwager was not, and could not be, an Active Player on the date of three or more Games, as required by section 1.10(a).

Plaintiff argues that Defendant abused its discretion because the 1955 and 1958 NFL By-Laws established that Mr. Schwager, although on the "Reserve" list, was an Active Player. Plaintiff identifies four ways a player on a team's Reserve list could play football pursuant to his contract:

1) He could be moved from the Reserve list to the Active list by his original team;
2) His contract could be traded by the original team to another team;
3) His contract could be assigned via waivers to a claiming team;
4) His contract could be optioned to another team.

Plaintiff's summary states, however, only that the team <u>could</u> have engaged him if it so desired.  Plaintiff does not then explain how the ability to engage Mr. Schwager if desired by both parties equates with Mr. Schwager having an obligation to perform football services.

Plaintiff then argues that the Plan language provides retirement benefits to both injured and inactive players.

10

Plaintiff explains that it covers injured players by virtue of the definition of "Credited Season." The definition of a Credited Season includes, <u>inter</u> <u>alia</u>, a Plan Year in which a player is an Active Player (including an injured Player who otherwise satisfies the definition of "Active Player"). Plaintiff does not address, however, the fact that this allowance for injured players still requires the person to qualify as an "Active Player," meaning that the Player would have to be obligated to provide football playing services.

Plaintiff also argues that inactive Players receive retirement benefits by virtue of the fact that the term "Player" includes players on inactive lists. Plaintiff further argues that simply having a contract for playing services renders an individual an "Active Player." Plaintiff's arguments, however, would render the distinction between "Player" and "Active Player" meaningless. Simply because an individual falls under the definition of being a "Player" by virtue of being on an inactive list or simply by being under contract does not convert the person from a "Player" to an "Active Player" unless that person is also "obligated to perform football services."

The Retirement Board interpreted the term "obligated to perform football playing services" as meaning that the Player had a duty to play football. It found that the Cardinals' ability to preclude Plaintiff from playing football did not

11

equate with having an obligation to play football.  The language in the By-Laws identified by Plaintiff does nothing more than show that Plaintiff could have played football if the Cardinals' had allowed him to.  Plaintiff has not demonstrated how that ability would equate with having an obligation to perform football playing services.  Thus, giving the phrase "obligation to perform football services" its ordinary meaning, the Court cannot say that Defendant's interpretation of that phrase was unreasonable when looking at the language of the Plan.

   Plaintiff also argues that the Board's denial was an abuse of discretion because the Bussert decision was not "substantial evidence" and therefore inadequate to support its decision.  Moreover, Plaintiff argues that the Board disregarded the NFL By-Laws and Coach Richardson's 1956 letter, which contradicted Mr. Bussert's letter.  Plaintiff focuses in particular on Mr. Bussert's description of the "Reserve-Left Camp" notation found on Mr. Schwager's player's card, which Mr. Bussert explained as meaning that Mr. Schwager could not participate in games, practice, or receive compensation.  Plaintiff contends that Mr. Bussert's interpretation improperly emphasized the "Left Camp" part of the notation.  Citing to the By-laws, Plaintiff demonstrates that they provide for only one inactive list: the Reserve list, and do not provide for subcategories of that list.  As such, Plaintiff argues that the "Left Camp" designation was

nothing more than a historical description of how Plaintiff ended up on the team's Reserve list.  Moreover, Plaintiff argues that the By-Laws contradict Mr. Bussert's interpretation by providing that Mr. Schwager could have played football had the Cardinals acted to allow him to do so.

Plaintiff asserts that Coach Richards' letter sent in 1956 asking if Mr. Schwager was "interested in playing ball for the Cardinals this fall," further refutes Mr. Bussert's letter by indicating that Mr. Schwager could have played football.  Thus, Plaintiff concludes that Mr. Bussert's letter is nothing more than an illegal attempt to modify the definition of Active Player to preclude Players who were categorized as "Left Camp." As a result, Plaintiff argues that the Board's decision is not based on "substantial evidence" and is, therefore, an abuse of discretion.

The Court does not read such an emphasis on the "Left Camp" notation into the Board's decision, however.  Rather, relying on the Plan language and Mr. Bussert's letter, the Board determined that Mr. Schwager's contract with the Cardinals allowed the team to prevent him from playing football if the team so chose; Plaintiff agrees with this point as it is the source of the injustice done to Mr. Schwager by the Cardinals.  But the Board states that the limited right to preclude Mr. Schwager from playing did not obligate him to perform football playing

13

services and so it concluded that he was not an "Active Player." As already discussed, nothing that Plaintiff has raised from the Plan or the By-Laws would indicate that the Board's interpretation of "obligate him to perform football playing services" was unreasonable.  Indeed, the letter from the Cardinals' Coach Richards indicates only that it was Plaintiff's discretion to attend training camp and does not indicate that Plaintiff had any obligation to play.

Finally, Plaintiff argues that the Board's decision was not principled or reasoned because it did not take into consideration or refer to the By-Laws.  The Court finds otherwise.  The record demonstrates that the Board had a significant amount of information before it, including that Mr. Schwager was precluded from playing football by virtue of the fact that he was under contract with the Cardinals.  The Board reconsidered its decision four times, each time with a greater amount of information.  During the last reconsideration in August 2009, at issue here, the Board also had before it the 1955 and 1958 By-Laws and Plaintiff's submissions which made many of the same arguments he is making here.  The By-Laws confirmed that the Cardinals had a contractual right to preclude Mr. Schwager from playing football.  The fact that they also demonstrate that Mr. Schwager could have played football had the Cardinals allowed him to play does not make the Board's decision

14

unreasonable.  The ability to play football does not necessarily mean that Mr. Schwager was <u>obligated</u> to play football.  The Court agrees that the Cardinals and the NFL served a great injustice on Mr. Schwager by prohibiting him from playing football.  That injustice, however, does not overcome the reasonableness of the Retirement Board's decision that the Cardinals' limited right to prevent Mr. Schwager from playing football did not equate with Mr. Schwager having an obligation to play football.

## **IV.  CONCLUSION**

For the foregoing reasons, Plaintiff Bruce Schwager's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted.  A separate order will issue.

```
                    _____/s/_____
                    William M. Nickerson
                    Senior United States District Judge
```

February  4, 2010